407 So.2d 932 (1981)
Carl RAGUCCI, Appellant,
v.
CITY OF PLANTATION, a Municipal Corporation, and William E. Greene, Chief of Police, Appellees.
No. 80-1163.
District Court of Appeal of Florida, Fourth District.
December 2, 1981.
*933 Howard M. Zeidwig, P.A., Fort Lauderdale, for appellant.
Frederick C. Heidgerd of Lunny, Tucker & Heidgerd, Fort Lauderdale, for appellees.
PER CURIAM.
Appellant brought the present action against the City and its Chief of Police. In Count I he sought damages for violations of the City's Charter and Chapter 112, Florida Statutes (1977), which allegedly abridged his civil and statutory rights and deprived him of his property without due process. In Count II he sought injunctive relief, reinstatement and back pay because of the alleged statutory violations. The trial court entered judgment for appellees, finding that they had not abridged appellant's civil and statutory rights nor deprived him of his property without due process. We reverse.
On September 14, 1978, the chief of police of the City of Plantation notified appellant, who was then a lieutenant in the police department, that his services were terminated as of that date.[1] Appellant was given a hearing before a three-member Complaint Review Board pursuant to Section 112.532(2), Florida Statutes (1977).[2] Two of *934 the three members voted to sustain the charges of "gross negligence and dereliction of duty" and "conduct unbecoming a police officer" and recommended that appellant be dismissed. Appellant was represented by counsel and fully participated in the hearing. It was and is the City's position that the Board was advisory only.
Appellant, while participating in the above hearing, contended that he should not have been dismissed by the Chief of Police and that the City's Charter required that appellant be suspended by the Mayor, and be furnished with a notice of the cause of the suspension and of the next regular meeting of the City Council. Further, appellant contended that any removal must be by the City Council.[3] It was the City's position that Part VI, Chapter 112, Florida Statutes (1977), the so-called Law Enforcement Officers Bill of Rights, had supplanted the administrative procedures of the City's Charter; and, accordingly, appellant was not entitled to insist that any suspension and removal be decided by the Mayor and the City Council.
We hold that the Law Enforcement Officers Bill of Rights did not vitiate Section 15 of the City's Charter.[4] The City Charter provided the City's law enforcement officers with an adjudicatory hearing before the City Council upon the issue of their removal for cause. While the general law makes provision for a Complaint Review Board it says nothing of its power.[5] The City of Plantation has taken the position here that the Board was only advisory, which was our holding in City of Hallandale v. Inglima, 346 So.2d 84 (Fla. 4th DCA 1977). See also Mesa v. Rodriguez, 357 So.2d 711 (Fla. 1978).[6] Had the statute provided *935 for an adjudicatory hearing before the Complaint Review Board we would agree that the general law governed.
What is at stake here is due process. Section 15 of the Charter conveyed upon the City's law enforcement officers a property interest in their employment because it expressly required that their termination be for cause. Thurston v. Dekle, 531 F.2d 1264, 1272 (5th Cir.1976), vacated on other grounds, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), held:
City employment which allows termination only for cause creates a constitutionally protectable property interest. Once created, the employment property interest may not be taken away without due process. (Footnotes omitted.)
See also Johnson v. School Board of Palm Beach County, Florida, 403 So.2d 520 (Fla. 1st DCA 1981) wherein the court held that a teacher "by virtue of his tenure, had a legitimate claim of entitlement to continued employment absent sufficient cause for his discharge, and therefore had a property interest in his continued employment of which he could not be deprived without procedural due process meeting constitutional standards," and Allison v. City of Live Oak, 450 F. Supp. 200 (M.D.Fla. 1978). As for what is due process the Supreme Court held in Board of Regents v. Roth, 408 U.S. 564, 569-570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972):
The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount.[[7]] (Footnotes omitted.)
Section 15 of the Charter clearly fulfilled the requirements of Roth, supra, by providing a pre-termination adjudicatory hearing. It was not the intent of the legislature by its enactment of the Law Enforcement Officers Bill of Rights to take away from appellant, who had a property interest in his employment, the procedural due process which Section 15 provided and to substitute in its place an advisory hearing whether pre- or post-termination. Accordingly, appellant was deprived of procedural due process by noncompliance with Section 15 of the City's Charter and is entitled to be reinstated[8] and to any damages that he may be able to establish that he suffered as a result of the City's failure to comply with Section 15.[9]
Lastly, we find no merit in appellant's argument that he was entitled to be informed of an investigation of him by another police agency.
For the reasons given above the judgment is reversed and remanded with directions *936 (a) to enter a mandatory injunction requiring appellees to reinstate appellant and (b) to proceed to a determination of appellant's damages.
REVERSED AND REMANDED.
DOWNEY and GLICKSTEIN, JJ., concur.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, concurring specially:
I concur completely in the majority opinion. Stated simply, the city has the authority to determine the conditions of employment of its employees including the grounds and manner of termination of employment. Under the provisions of Section 15 of the city's charter authority was vested in the city council to terminate the employment of city police officers. Chapter 112 of the Florida Statutes does not purport to supersede municipal charter provisions such as that involved herein. The city, of course, could amend the charter provisions at any time. However, it is undisputed here that the city made no attempt to amend the charter provisions or to comply with those provisions.
Notwithstanding the failure of the city to previously comply with its own code in terminating appellant, I see no reason, assuming adequate grounds exist, why the city cannot now act to properly terminate appellant's employment. In addition I believe any damages claimed by appellant should be limited to the difference between what he would have earned as a police officer with the city and what his actual earnings have been in the interim period since his prior discharge. Cobb v. Brautigam, 239 So.2d 125 (Fla. 1st DCA 1970); Rubin v. Shapiro, 198 So.2d 854 (Fla. 3d DCA 1967), cert. denied 204 So.2d 331 (Fla. 1967).
NOTES
[1] The letter stated:

The reason for this termination is the evidence that has been gathered in an Internal Investigation which was started as a result of your conduct and supervision in the incident of discharging your weapon at a wrong address. Furthermore, this office has evidence that over a period of the last year, specifically January 1978, you have been involved in and with persons using your residence for the purpose of Federal violations: namely, the sale of fully automatic weapons and the observation of narcotics on your permises [sic] at the time of the transaction.
[2] Section 112.532(2), Florida Statutes (1977) provides:

(2) COMPLAINT REVIEW BOARDS.  A complaint review board shall be composed of three members: One member selected by the chief administrator of the agency; one member selected by the aggrieved officer; and a third member to be selected by the other two members.... The board members shall be law enforcement officers selected from any state, county, or municipal agency within the county.
[3] Section 15, Chapter 29446, Laws of Florida (1953), being the City Charter, as amended by Chapter 69-1499, Laws of Florida (1969) provided that it was the Mayor's duty:

to suspend any appointed officer, except councilmen, at any time for gross neglect or dereliction of duty; provided, however, that the grounds for suspension of a police officer ... shall also include the following: Incompetency, neglect of duty, drunkenness, immorality, failure to obey orders given by proper authorities, insubordination or any other just or reasonable cause, at the same time notifying such officer or police officer in writing the cause of the suspension, and giving him notice to appear at the next regular meeting of the Council and answer thereto.
Section 15 further provided:
That when said meeting shall be held, to report such suspension and the cause thereof [sic]. If the Council deems the cause sufficient for removal, it shall remove the suspended officer and the vacancy shall be filled as herein prescribed.
[4] The effect of the Municipal Home Rule Powers Act upon the City Charter is recited in Section 166.021(4) and (5), Florida Statutes (1977):

(4) The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the Constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the Constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. However, nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards, any change in the form of government, or any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031. Any other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed.
(5) All existing special acts pertaining exclusively to the power or jurisdiction of a particular municipality except as otherwise provided in subsection (4) shall become an ordinance of that municipality on the effective date of this act, subject to modification or repeal as other ordinances.
[5] See note 2, supra.
[6] By our decision in City of Hallandale v. Inglima, 346 So.2d 84 (Fla. 4th DCA 1977) we did not intend to preclude an employing agency from making the action of such Board adjudicatory and not advisory. The Attorney General in 76-38 AGO said:

Since no quasi-judicial powers or duties are prescribed by statute for any such complaint review board, any such board that might be established in connection with s. 3 of the act is not, by the terms of Ch. 74-274, made an "adjudicatory board" or one vested with quasi-judicial powers, duties, or functions.
However, a municipality, under the authority of the Municipal Home Rule Powers Act (Ch. 166, F.S.), can create such a board in conjunction with the complaint processing and investigative system mandated by s. 3 (s. 112.533, F.S.) of the act and prescribe its powers, duties, and functions so as to grant the board such quasi-judicial powers necessary to give the findings and determinations of any such board the status of final adjudications, or, in its sound discretion, it may limit such board's findings to an advisory or recommendatory status.
[7] Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) later held that a post-termination hearing was sufficient to protect due process interests. Accord City of Fort Lauderdale v. Campbell, 362 So.2d 716, 718 (Fla. 4th DCA 1978).
[8] See West v. Board of County Commissioners, Monroe County, 373 So.2d 83 (Fla. 3d DCA 1979).
[9] The record reflects that the City Attorney represented to the trial court without objection:

We have otherwise stipulated with Mr. Zeidwig [appellant's attorney] that should the Court determine that the termination was improper, that we would set at another date testimony on the damages that would flow.
Therefore, we do not consider the appropriate measure of damages nor any mitigation thereof.